Jose Flores v. FS Blinds May it please the Court, Andrew Golub for Appellants Jose Flores, John Romero-Rodriguez, and Brandon Villareal. Your Honors, this case once again presents the opportunity for this Court to consider the question about how workers go about proving overtime damages in a case in which the employer has failed in its statutory obligation to create and maintain time records. As the Supreme Court held in Anderson v. Mount Clemens Pottery almost 75 years ago, and as this Court reiterated twice last year in a pair of cases, Five Star Automatic Fire Protection and Hobbs v. EVO, this is a lenient standard that denies the employer any opportunity to In this case, the trial court on cross motions for summary judgment misapplied the standard and despite substantial evidence from the employee's declarations along with other corroborating evidence made a determination that there was no evidence whatsoever of overtime hours worked and dismissed the case. Since there is so much published law, why in the District Court's order are we focusing on one unpublished decision? I assume you briefed it all legally. We did. I think the briefing before this Court is very similar to what we briefed below. And I think where the District Court erred in its very short opinion is by citing to this Court's unpublished opinion in Kirk, which in turn relies on an unpublished District Court opinion called, actually it was a published District Court opinion, but a District Court opinion called Ehegwerd, which was affirmed in an unpublished opinion here, that say employee testimony isn't enough. And the District Court, instead of considering all of the other evidence in addition to the testimony of the employees But the rule, even in published cases, is it may not be enough unless you substantiate, right? No, no. The cases from this Court are overwhelming that employee testimony Unsubstantiated plaintiff testimony suffices. There is no unsubstantiated concept, and the Court said this last year in a case called Guzman, which we cited in our brief, in which the appellee flatly ignored in their So are you saying, just to interrupt, are you saying Kirk is wrong or Kirk is distinguishable? Kirk is wrong. There is no substantiation requirement under Anderson v. Mount Clemens. And we have cited decades worth of opinions, precedential opinions from this Court, where worker testimony was enough. Do we have to reach that issue? Do you have no corroborating, substantiating testimony here? We have a lot of substantial corroborating testimony. So do we have to reach that issue? Well, I don't think you have to, but I think you could provide litigants within the circuit clarity because right now there is definitely some confusion that's being wrought by the And so I think we would benefit from having some clarity that worker testimony is in fact enough. And we've seen that in cases When you say worker, let's focus just on plaintiffs, because here you had, if I remember, you had testimony from non-plaintiff employees as well. We did. I call that, I think of that as corroborating. You're saying that the law is crystal clear published in the Fifth Circuit, just a plaintiff saying, I worked more than 40 hours, that's enough to meet the prima facie case? I don't, I don't know that I would, I don't know that I would subscribe to the view that just a naked assertion. But I think if there are facts, as in this case, where the employees say, I showed up for work typically Monday through Friday, sometimes Saturday at 5 to 530 in the morning, which is what Ramiro Rodriguez and Flores said. And I worked without material break until X o'clock in the evening, and each of them provided ranges. And I did this five, maybe six days a week. I don't have any time records. My best estimate is that But they did have work orders, didn't they? Well, they did have work orders. But remember, under the Mount Clemens test, the employer is not supposed to be able to erect enormous hurdles to jump over I agree. But under that test to you, there's some sympathy for an employer that really signs an agreement with the employee that says, I'm an independent contractor. They want to give their employees a lot of flexibility under that concept. And of course, you know, the record here, the employees then tell Uncle Sam, I'm an independent contractor, I want my tax deductions, and then turn around and sue and say, well, because you didn't have records of me as an employee. We, we have to make a showing of reasonable inference that, right, it's, it's not, it's not totally punitive of employers that don't have records if everything signaled to them that these were independent contractors. I don't think everything signaled to them that they were independent contractors. And we're conflating a lot of issues there. I know I am. On the tax returns. But I'm just, when you're saying, oh, this is what the Supreme Court did, they shifted burden because employers shouldn't have poor records. I agree with you. But it's still a showing the plaintiff has to make. I absolutely agree that, that the plaintiffs have to make a showing. And I think that if an employee merely said, I worked X hours of overtime, that might not be enough. But then you'd have to grapple with the Reeves versus International Telephone case, where the employee said, I have a mental running total of 3,100 uncompensated hours. I worked 74.5 hours per week. And the worker testified, and this is a quote, that these were just, quote, rough computations of his subconscious mind. This Court held in that published opinion that that was enough to shift the burden to the employer. I'm sorry. I'm going right where you're going, which is, it still goes back to a baseline assumption that they're employees. Absolutely. They're not employees. The employer, first of all, is not an employer, it's a contractor, doesn't have obligations to keep time records and all that stuff. Absolutely correct. So there is that issue of what are they? Yes. Independent contractors or employees. We should call them plaintiffs, I guess. And I will be the first to concede, Judge Wilson, that if these workers are not employees, the case is over. I mean, that would be a case dispositive issue. Now, Judge Bennett found that there was a fact question on that issue. He didn't say why he thought that. He didn't explain anything. He just denied summary judgment. Right. And so we're asking this Court to simply look at the— Isn't that intertwined with what he did, Drew? Well, I don't think that the employee status question is intertwined with his view that there was no evidence at all of damages. And what we are asking this Court to do is make a determination, because employee status, according to the Court's precedents, is simply a question of law. Obviously there are facts involved, but there are no factual findings. And so we've got a record where both sides have really laid out their best cases on employee status. And really, all of the elements weigh substantially in favor of employee status. A timeout right there. So you're wanting us to make the determination in the first instance of whether they're employees or independent contractors. Correct. You say that even though the district court didn't make findings about the factors, the five factors, additional factors that each side urges, that we should do that here. Yes. And that the record's complete. But how can you say that all of the facts point to employee status when the record is full of independent contractor evidence? Well, there really isn't significant evidence of independent contractor status, except for the agreement, the subcontractor agreement that these workers were made to sign. But this Court— They had their own subs. They picked up their own employment, their own materials. They scheduled the days they wanted. Well, these workers typically worked full time for this employer. They didn't pick up their own materials. They went to the warehouse every morning to get the materials provided to them by FS Blinds. What about control? I mean, some of what Judge Wiener's asking is right along my question. They controlled their schedule. They controlled how many jobs they did. If it fell over to the next day, they were sort of on their own discretion. They called themselves independent contractors to the extent they filed taxes and claimed self-employment tax and those kinds of things. So on the taxes issue, there are two cases, Robichaux and Parrish v. Premier Directional Drilling, which say that tax filings really are not relevant to the test here. I thought Robichaux said relevant, not dispositive. I don't have the quote in front of me, but I believe it says that it's ordinarily not a significant factor to be considered. That doesn't mean it's irrelevant, especially as to opportunity, for example, for profit and loss. Well, what Robichaux says is that workers are employees when the opportunity for profit or loss is determined solely by the employer's need for their work rather than their own initiative and planning. And here, the employer handed out set lists of work for each day, and when that work was done, there was no more to be picked up. So working faster didn't get them an opportunity to make more money. Or finishing their list faster, if that was possible, didn't give them an opportunity to go do some other business under the fiction that these were independent businessmen in business for themselves. The Hobbs case out of our court. Hobbs? Petrobucks, yes. That, boy, it sure helped our court to be looking at a bench trial to be able to go through all these factors. Well, I mean, I think Hobbs ultimately found that the welders in that case were, in fact, employees. No, but the court was able to look into permanency, exclusivity, a lot of questions that aren't answered on this record. I think permanency is answered. We have year-long contracts that these gentlemen were made to sign. One of them left well in advance of a year, right? One of them did work less than a year. Whose vehicles was it? Was it the company's or theirs? The workers did provide their own vehicles. And they deducted them on taxes as business expenses? They did. And I don't think that's a factor under the usury test. They can't have it both ways. Well, actually, I mean, they can have it both ways because they're presented with a Hobson's choice. The employer is providing them with a 1099 and presenting the fiction that they are contractors, not employers. Is the contractor or FS Blinds presenting a fiction to the IRS when they send out 1099s? I think that they are. And that's not unusual in misclassification. Everybody is presenting fictions to the IRS. I think that's right. And I would say, Judge, and I mean this is not in the briefing anywhere, but there is a process with the Internal Revenue Service where contractors or people that have been classified as contractors can submit a form and ask the service to conduct an investigation and make a determination. Now, there's nothing in the record here that that happened. But my point is, and this is in the usury case, which, again, we cited repeatedly and I don't think they cited in their response brief. The usury case says the fact that there is an agreement or that the parties agree to call each other contractor and contractee, that is not relevant to the question because parties can't contract around employee status. The focus is on the nature of the relationship. And here we have integral workers, which is a sixth factor that this court has adopted and talked about it in Hobbs v. Petroplex and pointed to authority from other circuits in support. Degree of control is very significant. And that factor is considered to be significant only when the worker exercises so much control that he stands apart as an independent business entity. That doesn't describe these workers. The fact that they deducted mileage on their tax return doesn't make them into an independent businessman. And, in fact, in the record there's testimony from the president of the company, Mr. Kalagna. He was asked at his deposition about whether or not he'd ever heard of these employees engaging in some independent business hanging blinds, and he was completely unaware of that. So this really was a fiction that these workers were contractors. And the case law talks about, and I think this is in the Skipper case, although I could be wrong, but it talks about the fact that sometimes employers bet wrong on employee status. And having bet wrong, you know, the Fair Labor Standards Act is a fairly technical statute, and by design the definition of employee is intended to be as broad as any federal statute that there is. And we've cited cases to that effect in our brief. You argued as to the factors that they set the times for the jobs to be done. To some extent they did. In your brief on 41, they say that's not true. How is that not a material disputed fact as to a relevant factor? Well, they say it's not true except for the fact that the testimony shows that it was, that sometimes they could dictate the order in which they did their jobs. And there is actually a case out of this court called Hathcock, and I don't have the site. I can provide a 20HA letter on this. But in Hathcock there were delivery drivers, and the court said that just because they got to decide what order they did their deliveries in didn't make them contractors instead of employees. No one element might do it, but when you add all of the elements in this case, what does that do? Well, I think the worst case scenario, Judge, is that if you add all the elements in this case together, there would be a fact question. I think, and we have submitted, that based on the record that's before this court, you can resolve that issue in favor of employee status and then move on to the question of whether the employees have satisfied their burden under Mount Clemens, which I think they handily did. You could resolve it either way. Well, I don't think. Or they were not. That there were no, I'm sorry, I see my time is up. Employees are not employees. Yeah, well, I think that procedurally, because the issue was fully presented, the court could rule. But I think the worst case scenario here on that is that there's a fact question that needs to be tried. There certainly isn't a cross appeal by the appellate. Well, it's intertwined with what was decided. Well, I think that's fair, and it was certainly raised by both parties below. So I think the rule in this circuit is that summary judgment can be sustained on any issue that was presented in the district court. Thank you, Counsel. You've saved time for rebuttal. Thank you, Judge. Thank you. Okay, Mr. Lee. May I please? Yes. Steven Lee for Applee FS Blinds. The district court correctly found that appellants had failed to create a just and reasonable inference of the amount and extent of overtime work. And I want to pick up on that because Mount Clemens states a very clear test, one that's been followed for many years. It requires the appellants in this case to produce sufficient evidence of the amount and extent of overtime work as a matter of just and reasonable inference. So the standard requires sufficient evidence of both the amount of overtime work and the extent of overtime work such that you can create a just and reasonable inference. What Judge Bennett found, District Judge Bennett found, is that while there was a declaration, conclusory declarations from all three of the plaintiffs in this case, those declarations were conflicted with evidence in the record where they admitted, for example. So each of the appellants in this case claimed that they worked an average of 70 hours a week, sometimes less, sometimes more. The evidence in the record from their depositions and other evidence demonstrated that there were a number of weeks when they absolutely could not have worked 70 hours. All right, but that's an average. Yes. What undermines the average? Yes, Your Honor. What undermines the average is a couple of things. First of all, there's one week in the record, there was one week of work orders. They had their exemplar week that they prepared and offered in. Yes, Your Honor, and in that one week of exemplars, if you include the drive time, and even counsel admitted in the briefing in the lower court that there were issues about the MapQuest or RouteXL that they used to try to come up with the route time, there's no evidence on that from a testimonial standpoint. None of the plaintiffs testified about their driving time, so the only evidence that was included in this one week exemplar was something from RouteXL that was admitted in the record that was not accurate. Who prepared that? Was it counsel? It was counsel. It's my understanding that counsel prepared that and counsel prepared the two summaries that were submitted as evidence in the district court. We objected to that. I will admit that Judge Bennett did not rule on that in his order, but I think that acknowledging that there was issues with the evidence and he did not cite to those summaries in great detail demonstrates that he also questioned the legitimacy of those as evidence when they're not supported by any testimony from any of the appellants. But those summaries, that one week summary showed, if you include the driving time, it showed one plaintiff had 80 hours that week, one had 72, and the other had about 58 hours, not even reaching the 70 mark. One of them had 72. But to do the average, if you look also at the other document that was submitted by counsel, which was simply a running total of every week 70 hours, so 40 hours of work and 30 hours of overtime. Let's get from the trees and look at the forest and what I'd ask counsel opposite, and that is can we not review the holding or the lack of holding because it's intertwined with what was held, and that is get to the question of independent contractor or employee, because if we can and it's the evidence in this case would show that that would mean that the overtime and all of that was not important. Yes, Your Honor, I believe that you can on the record before you, and I believe that this court has done it before in the premier directional drilling case, the parish case, which was cited in our brief. In that case, the court actually went through this very issue and said, in other words, after reviewing the record, we cannot discern any fact that is both genuinely disputed and could change the outcome of this proceeding. And so the Fifth Circuit in this case did make a determination, even though it wasn't decided below, that they could reach the independent contractor versus employee issue, and we believe that . . . Do you want to talk about some of the evidence that supports independent contractor? Yes, Your Honor. So I think this court is familiar with the factors. With respect to the first factor, the degree of control, the independent contractors, the appellants in this case, had great control over their schedule. They could decide when to work. They could decide whether they wanted to work. And there was evidence in the record that at least two of them took off. One took off for a month at one time and another several weeks, another time without penalty. They took days off. They decided what days they wanted to work. Is there any evidence in the record where they showed up at 5.30 whatever morning and F.S. Blount said, well, here are your ten projects today, and they said, well, I can only do five today, or I want to do three but not the other seven? In other words, did they have any picking and choosing once F.S. Blount gave them the list of here are your projects? Your Honor, I'm not aware of any evidence to that effect. So not to that level of granularity, just they were generally flexible in when they worked at all? Correct. And I think the evidence is that they received phone calls the night before from F.S. Blount and said, we have X number of projects if you want to work tomorrow. And so they would commit the night before as to whether they wanted to work or not work. And so by the time they showed up the next morning, they knew the list of projects that they were going to work. And so they got to choose whether they wanted to work. They then decided where to go and how to go. Now, the only evidence, the evidence in the record in terms of who could direct when work was done, that came from the customer. So these were houses that were being built, and every once in a while a customer would ask, could you please get these blinds done at a certain time? And so the evidence in the record is that from the timing standpoint, the appellants typically could pick their own time unless there was a customer request. The customers were all F.S. Blinds customers, not the plaintiffs. Yes, Your Honor. Correct. F.S. Blinds set the piece rate? Yes, Your Honor. The rates were set by F.S. Blinds. So the customers are F.S. Blinds. The rates are set by F.S. Blind. Yes, Your Honor. And but on that issue with respect to how they could gain more work, the more efficient they were, the more work they got. So if it became known that, for example, Mr. Flores had the capacity and did in fact do a number of projects in one day, that could earn him the right to get more and more work. And so there was an incentive, and that's why some of them hired helpers and actually got helpers to help them do more work to maximize their profits. Did he ever work for anybody else? Mr. Flores did, yes. Other than friends and family? Well, the testimony is that he bought blinds from F.S. Blinds and installed them for family for pay. Was that a separate client or customer? It certainly wasn't a client of F.S. Blinds. Could they have worked for competitors of F.S. Blinds? Yes, Your Honor, they could. But did they? I'm not aware that there's no evidence in the record that whether they did or they did not. We do know that at least two of them, again, left for long stretches of time. Didn't we say in Hobbs that whether they're integral to the employer is a pretty big consideration? And this is the entire company. It's not as if these are lawnmowers or cleaners. Without these people, the company doesn't exist, right? Your Honor, so that particular factor has yet, in my opinion, to be adopted by the Fifth Circuit, and there have been a number of cases that have talked about that. I thought it was applied in Hobbs. It has been applied, but it was applied in Hobbs because both parties asked the court to apply it. That's what the Hobbs court recognized, that both parties have asked us to this, so we're going to look at this. But if you take— Oh, but one party asked us to here as well. I mean— Yes, Your Honor, but our position is that is not a position or not a statement that the Fifth Circuit has yet to adopt if you look at the case law. You have to anoint it as an official sixth factor, and we haven't done that yet. Correct. That is correct. But I still think even that issue doesn't necessarily mean that's not the only issue. It's not the outcome-determinative issue, and our business is selling blinds. Certainly these gentlemen are very helpful to our business. I'm not going to deny that. They may install the blinds, but if you look at what our business is, it's selling blinds to homeowners or customer—actually home builders. These gentlemen install them, but I don't think that rises to the level— Install and repair. And repair. Correct. When asked to repair, sometimes it's their repairs. Other times it's repairs that need to be made. But they also had employees of their own, didn't they? Yes, Your Honor. At least two of them hired their own employees. Those are reflected on their tax returns. There was no—and those were their employees. There's no question about that. They had the right to hire employees and helpers and, in fact, did. And with respect to the tax returns, I think those are important. And, in fact, the premier drilling case also recognized that it was— that the court could look at tax returns to understand the profit and loss that was available, but also to understand the relationship. And I think, again, we've cited in the record the tax returns from these gentlemen in terms of the deductions they took, the helpers, their vehicles, the stuff that they supplied, which also goes to the independent contractor test, which is what do they supply. Well, they supplied their own cars. They supplied all of the tools and materials that were necessary to hang the blinds. The only thing the company supplied were the blinds themselves. Does the record reflect how many years each of the plaintiffs were working with your client? Yes, Your Honor. Mr. Flores worked for 18 months. Mr. Rodriguez-Romero worked for seven months and took a couple of weeks off, so it wasn't a full seven months. And then Mr. Villarreal worked for 20 months. But, again, he took off at least one full month and another 10 weeks. So two of the three had worked in a previous 12-month period. Yes, Your Honor. And I'm familiar with the permanency issue in some cases that talk about this sort of 10-month window. Certainly in this case we have at least one who never met that window. And another gentleman, while he did work for 20 months, was gone at two different lengthy stints and, again, came back, which I think is evidence of this independent contractor relationship. This was not an employee-employer relationship. If you're an employee and you take off for 10 months, you don't always get to come back, and certainly if it's not documented. There are no documents about the reasons he left other than the fact that he testified. How were they selected? I'm sorry? How were they selected or hired by FS-Blinds? Your Honor, I don't think there's any evidence in the record, but it's my understanding that they certainly come to FS-Blinds and represent themselves as folks that can install blinds. But I don't believe there's any evidence in the summary judgment records as to how they were. Yeah, nobody testified about how they were selected or how they were processed. I mean, I know they entered this agreement that says independent contractor agreement. I'm not sure how probative that is because you can't put labels and have them mean much. But, I mean, I just wonder, how did they come back and start working again, or was it just sort of an ad hoc basis? But it's not in the record. It's not in the record. I think the ones that were, well, certainly the two that left for a period of time and came back were familiar to the company because they worked there before and said, I'm ready to come back if you have work for me. So, again, it was that type of relationship. There was this agreement that was signed that they acknowledged they were independent contractors. They also acknowledged that they could hire helpers, and if they hired helpers that those helpers would be their subcontractors, not ours. The opposing counsel said the record does not support your suggestion that you all mandated the job specific. I'm sorry? The opposing counsel was saying that the record does support that you mandated when they do job times. Your Honor, the testimony from our employees were that that came from customers. The customers are the ones who set the time. So normally a work order, we would hand out work orders. They were free to do those at whatever point in time they wanted to unless there was a customer request that a certain time be met. So they didn't come from us but a customer. If I may, just again on the shared initiative, I guess I want to talk about the two others we haven't talked about, the shared initiative. Again, the idea that this ties in with the profit and loss, that the more that the appellants did to do installs of blinds, they got more and more blinds. So the initiative, if I hired helpers, there was more opportunity for profit and loss that they could earn. And so we believe that the record that's before the court shows that they were, in fact, independent contractors. The Everline case, I think, is the one that we would tell you is the closest to showing what that lines up with our view that they are, in fact, independent contractors. And in that case, they were satellite television service company, and they had folks that were installing satellite TV. And this court found that they were, in fact, independent contractors. We think that case lines up with our case here to establish that they were independent contractors. Unless there are more questions on that, I want to just touch real quickly on the damages question. I realize, Your Honor, that it certainly can be intertwined. If you decide that they're independent contractors, then we're done. But on the damages question, even if you were to decide either, A, that they're employees or that there's a fact question that needs to be decided, I still think we have to come back to the damages question because there is no evidence of the amount and extent, sufficient evidence of the amount and extent of the overtime work that gives rise to a just and reasonable inference. And I say that because the evidence, the only evidence that was actually given in the record of the amount of overtime work was this attorney-created summary that put in 70 hours for every week, even weeks where we know that they didn't work a full week. And to talk about your average, there's actually no evidence in the record to establish that that average of 70 hours is reasonable other than them saying, well, I might have worked 70 hours. My best good-faith estimate is 70 hours. But they talked about when they generally started work and how late they generally worked. And so they gave ranges. The plaintiffs did, right? Yes, Your Honor, but they didn't provide in that affidavit. And I think the case law talks about the fact that you've got to give me more than just when I started and when I ended. What did I do? What was the work that I did that led to these hours? They generally talked about that, too, did they not? Not in the declarations, Your Honor. What they said was the declaration simply said I started at 5.30 and sometimes I worked until 10. But there was no evidence of what were you doing until 10. I thought they gave generally how long it took to install a set of blinds per window or what have you. There was a supplemental declaration that addressed how long it took to measure a window. And they said, well, it takes about one minute to measure a window. There's testimony in the depositions where they couldn't answer how long something took. Then they would say, well, maybe it was five minutes to do a blind and then it was eight minutes. There was testimony all over the place. But what Judge Bennett found was, first of all, there was no the evidence in the declarations and the evidence in the damage summary conflicted with deposition testimony where these individuals said, I can't tell you how long I worked. And, in fact, one of the witnesses even said, I can't tell you whether I worked over 40 hours. So there were issues in the record. And the problem with the summary is that it's 70 hours for every week, even weeks where we know for a fact that they didn't work anywhere close to 70 hours, and they admitted that they didn't work 70 hours. And so the court had an issue with both the amount of the overtime claimed, and I would also submit that the court had an issue with the extent of overtime. Again, they have to provide sufficient evidence of both the amount of overtime worked and the extent of overtime worked. And here we have people who worked, in one instance, 80 weeks, and yet the evidence that they submitted in support of the extent of his overtime was one week. Same for the other two. They submitted one week to say, well, this is a summary of all of the weeks that we've worked. So are we talking about, and this may go to what you said, amount of overtime versus extent, but are we talking about whether they've proven they worked overtime at all? In other words, have they met their Mount Clemens burden? Or the amount of damages? In other words, if FS-Blinds has quibbles with, well, this week it was 30 hours, this week it was 75, this week, you know, the amount of proof, it seems like, I mean, are we talking about liability or damages, I guess, to put it back into? Sure, Your Honor. I think it's both. I think Mount Clemens says it's sufficient evidence of both the amount of overtime worked and the extent of overtime. So they've got to basically show liability and damages at this point in order to survive summary judgment. Correct. And they need to provide evidence, sufficient evidence. And, again, so there's some questions about there are cases that reference substantial evidence. I don't think that's a change in standard. I think that's recognizing the sufficient evidence point that has to rise to a matter of just and reasonable inference. You can't just give me an affidavit that says I worked 70 hours in a week. You have to do more than that. That's what the cases hold. And so whether a court used the word substantial, I don't think that's a change in standard. I think that's, again, a recognition of the fact that Mount Clemens requires the sufficient evidence. Is the plaintiff's testimony enough? Just hypothetically, not in this case. Hypothetically, if it didn't conflict with evidence in the record, it potentially could be enough. And I think the cases talk about this, Your Honor, where it's got to talk about more than just saying I worked 70 hours a week. You say it conflicts here with other evidence in the record. Remind me, where are the conflicts? Sure. The testimony from the plaintiffs in their depositions when they couldn't describe how it is that they worked more than 40 hours in a week. So they went from not remembering to remembering. To remembering. There's evidence that they put in for damages for weeks when they admit that they only worked one day, for example. And so when you talk about the average you have an issue with, how do you get to 70 hours when you have weeks in your summary where you – I see I'm out of time. May I finish this? Where you have less than – much less than 70 hours. And then the last thing I would say with respect to Mr. – I believe it's Romero. The only evidence he submitted was one week where he worked, even if you include his drive time, it was 56 hours. Okay, counsel. Thank you. Before you leave, would you spell the name of the case you referred to about installing TVs? Yes, Your Honor. It's Eberline. E-B-E-R-L-I-N-E. E-B – and I'll give you the site. It's E-B-E-R-L-I-N-E. And that is – it's 636. It's a Fifth Circuit case. It's in the federal appendix at 225. I'm sorry? 636 Fed Appendix at 225. And that's a 2016 case from the Fifth Circuit. Okay. Thank you. If it pleases the Court, I'll just start real briefly with the Eberline case. That was a case that was tried, and a jury determined that the workers were not employees. So the question before this Court was whether that decision by the fact finder was supported by the evidence, and they decided, well, it was. The jury could have determined that there were contractors under the facts presented there. So it's not really instructive in this case. Judge Wilson, you asked a question about helpers. That's an issue that came up and that this Court rejected in the Ussery case and in Mednick v. Albert Enterprises. And what the record showed about helpers was this. Mr. Villareal only rarely used them. That's pages 473 to 75 or 433 to 35, depending on the typo in my notes. Mr. Flores used helpers, but only when he was instructed to do so by FS Blinds. That goes to the question of control. And there is no evidence in the record whatsoever of Mr. Romero Rodriguez ever using a helper, although he corroborated the testimony that FS Blinds would sometimes encourage the workers to get helpers. Judge Higginson, going back to the question that you posed about whether or not there were instructions that were given to do certain jobs at certain times, I think that what my friend has done is conceded that, yes, there were. He's pushing that off onto the customer. But what happened was if the customer was closing on a home sale and they were closing at noon, they would tell FS Blinds, hey, we need the blinds done before noon. They'd tell FS Blinds, FS Blinds would put on the work orders to the blinds installers, this has to be done before noon. And so that is an example of them controlling what needed to be done and when it needed to be done. Is the level of how integral they are an uncertain factor? Is there any circuit that doesn't consider that? We have in our reply brief, I think, a footnote that has a site from every circuit where I could find a case saying that the integral nature of the job is a factor to be considered. There were a few circuits where I could not find a case, but the overwhelming number of courts that have considered the question have found, as this court did in Hobbs, that that is a factor to be considered. But the last thing that I'd like to say with my rebuttal time, and this really goes to the overarching Mount Clemens question, is the idea that there was insufficient evidence in the record here. This case is just like Skipper v. Superior Dairies, where the dairy delivery man testified, I showed up at the plant at 4.30 every morning, I went out and did my run, I got back at the plant at, I don't recall what he said, maybe 5 o'clock, 6 o'clock. Once I got back to the plant, I would do some paperwork, clean the truck, load it for the next day. I worked Monday, Wednesday, Friday, and a shorter route on Saturday. The court found that there was evidence in that case that this man worked overtime and reversed the district court's determination, which is just like what Judge Bennett did here, that there wasn't any evidence at all of any of those occurrences. I'm right or wrong in remembering that there was some non-plaintiff employee that said they worked overtime. In Skipper? No, in this case. Oh, absolutely, and that was the next point. Bob Simpson was the 30B6 witness for the company on the question of how many hours they worked, and he said that just to hang the blinds was a 30 to 50 hour per week task. He then admitted that there were a lot of other things they did. First, there's the driving. They're driving all over Houston and extended areas outside of Houston to do these jobs. Once the day starts, they have to physically load the blinds into their vehicle. Then they will do all the driving to the different sites. At each site, they unload the blinds. They lug the blinds into the house. They set them up at the windows. They unbox the blinds. Then they do the hanging. That's the 30 to 50 hours that we know about. Then they have to gather all the trash up, haul it away, and then they go on to do the next job. They also do window measurements. That was not included in this 30 to 50 hours a week. So viewed in the light most favorable to the non-moving party, we have an admission by the employer that this is a 50-hour week at a minimum just to do a subset. It is not a very long leap, certainly under the lenient Mount Clemens standard, to say that these workers established by just and reasonable inference that they worked overtime, they didn't get paid for it, and that it was an average of 70 hours per week. It was certainly less sometimes, but it was also more. I see my time has expired, unless you have any other questions. Thank you both. The case is presented. We have one more case for the day.